BRAMHAM *v.* LANIER BROS.

(*Nashville.* December Term, 1917.)

1. **BANKRUPTCY. Amendment of schedule. Set-off. "New estate."**

The bankrupt in filing a voluntary petition failed to schedule
among his liabilities defendant's claim for damages for failure
of bankrupt to deliver feed. On thereafter resuming business
under a different name the bankrupt sold defendant hay, and
defendant claimed credit for the amount of the former claim,
whereupon plaintiff, by leave of the bankruptcy court amend-
ed the schedule so as to include defendant's claim, and later
the bankrupt was discharged and brought suit on the hay
claim. Bankruptcy Act July 1, 1898, chapter 541, section 69, 30
Stat. 565 (U. S. Comp. St. 1916, section 9652), provides that in
all cases of mutual debts and credits between the estate of
the bankrupt and creditor the accounts shall be stated and
one debt set off against the other. *Held,* that the amendment
related back to date of the filing of the petition, so that de-
fendants could not set off their claim, since the subsequent
transaction constituted "new estate" of the bankrupt, which is
that estate which accrues to him after the date of filing of the
petition in bankruptcy. (*Post, pp.* 704, 705.)

2. **BANKRUPTCY. Set-off of claims. Mutuality.**

Mutuality is necessary to a set-off, and where debts or credits
do not exist at the time a petition is filed in bankruptcy, there
is no mutuality within Bankruptcy Act, section 68. (*Post, pp.*
705-708.)

Cases cited and approved: Bank v. Sherman, 101 U. S., 403;
In re Progressive Wallpaper Corp. (D. C.), 240 Fed., 807.

Case cited and distinguished: In re Michael's (D. C.), 196 Fed.,
718.

Bramham v. Lanier Bros.

FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —Thos. E. Matthews, Judge.

G. S. Moore, for relator.

Pendleton & De Witt, for defendant.

Mr. Justice Williams, delivered the opinion of the Court.

Bramham, a wholesale grain dealer of Union City, in 1913 contracted to sell a carload of oats to Lanier & Co., of Nashville, but failed to make delivery. Lanier & Co., purchased oats in Nashville at an advanced price to cover, thus suffering damages to the extent of $107.50, and Bramham was asked to remit, but was not sued.

On October 2, 1915, Bramham filed a voluntary petition in bankruptcy, but failed to schedule among his liabilities this claim of Lanier & Co. Two days later he was adjudged a bankrupt.

In 1916 Bramham, who had resumed business under the name style of Bramham Grain Company, sold a carload of hay to Lanier & Co. for $127.13, net. That firm, retaining $107.50 to cover their damage

claim, mailed a check to Bramham for the balance which check Bramham refused to accept.

Lanier & Co. at the time they purchased the hay and undertook to retain the $107.50 had no notice that Bramham was in bankruptcy. The latter thereafter petitioned the court of bankruptcy for leave to amend the schedule so as to show a debt due to Lanier & Co. in the sum of $107.50; and leave was granted, and the amendment was made. Later a discharge in bankruptcy was issued to Bramham, who proceeded to bring suit on the hay claim of $127.13.

The circuit judge and the court of civil appeals have concurred in denying plaintiff a recovery, on the ground that since Lanier & Co. dealt with Bramham in purchasing the hay in ignorance of the pendency of the bankruptcy proceeding that firm was entitled to set off their indebtedness for the hay by the oats demand.

The theory of the court of civil appeals, set forth in its opinion, was that the bankruptcy proceeding should be treated as nonexistent as to Lanier & Co. up to the date of the amendment of the schedule, which amendment should be treated as a new proceeding so far as Lanier & Co. were concerned; that firm in the meantime being left to contract with Bramham freed of any embarrassment in respect of any claim, counterclaim, or right of set-off, that arose in *bona fide* dealing.

We are of opinion that this disposition of the cause cannot be sustained. At the base of the argument is

an erroneous conception of the effect of a proceeding and a discharge in bankruptcy. ·

Incorporated in all bankrupt systems, English and American, is the idea that everything stops at a certain date, as of which reckonings, are made, and to which *status* and rights relate.

For the purpose of testing rights upon liquidation, the date of the filing of an involuntary petition by the bankrupt is this date. The estate of the bankrupt as it then stands goes into administration, and a creditor's right to a set-off or counterclaim is determined as of that date.

The proceeding in bankruptcy impounds the bankrupt's existing estate, but it does not reach forward and affect the wages, earnings, profits, or transactions that subsequently arise. While they belong to the bankrupt, they are parts of his new estate.

A "new estate" of a bankrupt may be defined to be that estate which is built up by or accrues to him after the test date which is the line of demarcation between such and the "old estate"—the date of filing of the petition.

In order to a set-off mutuality is necessary, and in order to mutuality the debts or credits must exist at the time thus indicated.

Section 68 of the Bankruptcy Act provides that, in all cases of mutual debts and credits between the estate of the bankrupt and a creditor, the "account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or

paid." U. S. Comp. St. 1916, section 9652. This necessarily implies a final statement of account, which in turn implies a fixed date. The closing of the account implies that mutuality ceases, in the sense that it does not attach to, or inhere as an incident in, after transactions of the bankrupt.

In a case under an early bankrupt act (*Petitpain* v. *Redeau,* 6 La. Ann., 411), it was said to be "clear that the obligations of a bankrupt prior to his discharge cannot be allowed to offset claims contracted since his discharge."

*In Re Michaelis* (D. C.), 196 Fed., 718, is a case construing the present Bankruptcy Act. It there appeared that at the time the petition was filed the bankrupts were indebted to a bank. Thereafter they made a deposit in the bank, and the bank claimed the right to hold and apply this deposit on its pre-existing debt, since it had no notice of the filing of the petition in bankruptcy, under the asserted power to set off or counterclaim its demand against the deposit thus made after petition filed. The court held against the bank saying:

"The mutual account between these bankrupts and their bank of deposit was closed by operation of law the moment petition was filed, and any money thereafter intrusted by the bankrupts to the bank was like a deposit with another person and not subject to any set-off, existing before petition."

It seems, rather, that the deposit should be treated as if made by another person; it did come from a

different source in legal contemplation—the new estate of the bankrupt, to which the bank had not the right to resort for satisfaction, directly or indirectly. The above ruling was in a case where the petition was involuntary. We have found no case in which is adjudged the rights of parties where the petition was a voluntary one; but we hold that there was wanting the essential element of mutuality to support the set-off or counterclaim urged by Lanier & Co.

A different determination does not result from the fact that until amendment, Lanier & Co. were not scheduled as creditors. Omitted creditors may be added by amendment, but such amendment relates to the date of the filing of the petition (Remington on Bankruptcy, sections 273, 493), and effective, it seems, as against rights claimed to have intervened between the date of filing and the date of amendement (*Bank v. Sherman*, 101 U. S., 403, 25 L. Ed., 866). The proceeding is a single thing; there are not two. There is one discharge, not two; and it has relation back to the filing of the petition—not to two or more distinct test dates, as the court of civil appeals conceives.

Amendment of the petition may be made in order to a correction of schedules for the purpose of establishing a set-off against the demand of a creditor who filed a petition in bankruptcy proceeding (*In re Progressive Wallpaper Corp.* [D. C.], 240 Fed., 807), and equally, it seems, to defeat a claim of set-off put forward in a suit such as the one before us.

The suggestion  that Lanier & Co. proceeded in good faith and in ignorance that Bramham was a bankrupt when they purchased the hay of him is answered by the fact that they could not take an advantage from receiving goods from the bankrupt without knowledge of his bankruptcy any more than a creditor may gain such an advantage by dealing with one whose estate is impounded and in the hands of an ordinary receiver, or under attachment. *Bank v. Sherman,* supra.  Ignorance in such case does not receive as its reward preferential right or treatment. Such would be the treatment of Lanier & Co. should they prevail in this contest.

The petition for *certiorari* is granted, the judgment of the court of civil appeals reversed, and judgment will be entered here for plaintiff.