In re John Lewis HOWELL, Jettie Darlene Howell, Debtors.

Bankruptcy No. 380–00072.

United States Bankruptcy Court, M. D. Tennessee.

March 28, 1980.

Harry D. Lewis, Nashville, Tenn., for Debtor.

Hal. D. Hardin, U.S. Atty., Middle District of Tenn., Nashville, Tenn., for Department of Labor.

John P. Garner, U.S. Dept. of Labor, Nashville, Tenn., for Department of Labor.

Keith M. Lundin, Waddey & Lundin, Nashville, Tenn., Trustee in Bankruptcy.

John P. Garner, Atty., Nashville, Tenn., for Dept. of Labor Robert Washko, Asst. U.S. Atty.

## ORDER

PAUL E. JENNINGS, Bankruptcy Judge.

This matter is before the Court upon action by the Department of Labor, (hereinafter Department), for relief from the stay provisions of 11 U.S.C. § 362; for relief from order directing payment to the Trustee of monies to fund the Chapter 13 plan; and objection to confirmation of the proposed plan. The debtors have filed a motion to modify the Chapter 13 plan to change the classification of the claim of the Department from unsecured status to se-

cured status with full payment of the claim through the plan over the three year duration of the plan.

The issues to be considered are (1) the authority of the court under Chapter 13 to order the Department of Labor to make monthly payroll deductions from the debtor's disability payments; and (2) the classification of the Department's claim for recovery of overpayments made to the debtor.

The debtor is presently receiving 100% disability payments from the Department pursuant to the Federal Employees' Compensation Act (FECA). 5 U.S.C. § 8101, *et seq.* The debtor was employed by the Tennessee Valley Authority (T.V.A.). During the course of the employment he became disabled and began receiving payments under the FECA. Subsequently the debtor returned to work with the T.V.A. but apparently continued to receive disability benefits. Complete disability was again experienced by the debtor. Pursuant to 5 U.S.C. § 8129(a)[1] a determination of overpayment was made and pursuant to regulations it was determined that $400 monthly should be withheld from debtor's monthly disability benefits. Debtor receives approximately $1,100 a month as 100% disability benefits.

■ It is the position of the Department that exclusive jurisdiction is vested in the Department to determine disability, amount of payment, overpayment, rate of recoupment of any overpayment and any subsequent redetermination of disability. The rate of repayment of the overpayment is more fully discussed herein. However, initially it should be noted the court does not read the stay provisions of 11 U.S.C. § 362 to operate to interfere with its Congressionally imposed duties as to determination of disability or any subsequent reevaluation of

disability. The regulations of the Department as to procedures for periodic reexamination or whatever to consider whether the disability of the individual has changed will not be stayed by 11 U.S.C. § 362. That provision, although the statutory language is extremely broadly drawn, is primarily concerned with creditor action. It should not be interpreted to affect such determinations. Congress did not so intend.

[2] The Court does not have before it whether the stay applies as to the determination of the amount of overpayment. That has already been determined. Debtor suggests in the motion to modify the plan that an administrative rehearing will be sought by the debtor of the amount of overpayment including whether the amount should be excused under 5 U.S.C. § 8129(b).[2] Certainly, if the stay is applicable, relief is appropriate as Congress provides for such matters to be determined administratively and has established the machinery in the Department for establishing overpayments and presumably any reconsideration, if such is deemed appropriate. This Court does not seek to venture into the areas of the Department's Congressionally recognized administration expertise.

■ For reasons now stated, the Court does hold that Congress has determined the Bankruptcy Court has jurisdiction as to a claim by the Department against the debtor for overpayment and as to the debtor's income under the FECA.

■ The Department of Labor is an "entity" subject to the income deduction orders of a United States Bankruptcy Court in a Chapter 13 proceeding. Section 1325(b) of the Code states that after confirmation of a Chapter 13 plan ". . . the court may

---

1. 11 U.S.C. § 8129(a) provides:

     (a) When an overpayment has been made to an individual under this subchapter because of an error of fact or law, adjustment shall be made under regulations prescribed by the Secretary of Labor by decreasing later payments to which the individual is entitled. If the individual dies before the adjustment is completed, adjustment shall be made by decreasing later benefits payable under this

subchapter with respect to the individual's death.

2. 5 U.S.C. § 8129(b) provides:

     (b) Adjustment or recovery by the United States may not be made when incorrect payment has been made to an individual who is without fault and when adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

order *any entity* from whom the debtor *receives income* to pay all or any part of such income to the trustee." 11 U.S.C. § 1325(b). "Entity" is defined in § 101(14) of the Code as follows: ". . . 'entity' includes person, estate, trust, *governmental unit*;." 11 U.S.C. § 101(14). ". . . 'Governmental unit' in § 101(14) is further defined in § 101(21) as follows: ". . . 'governmental unit' means . . . department, agency, or instrumentality of the United States, . . . ." 11 U.S.C. § 101(21). The Department is a "governmental unit" under § 101(21) and, therefore, is an "entity" under § 101(14).

The definition of "entity" in § 101(14) should be contrasted with the definition of person in § 101(30). Entity includes governmental units, while person does not. The Code carefully uses these terms. For example, note their use in § 109(b) and (c). Congress chose the word in § 1325(b) and intended to include governmental units. Section 1325(b) thus subjects the Department to orders of the Bankruptcy Court requiring the payment of a debtor's income to the Trustee in Chapter 13 cases.

The expanded jurisdictional provisions of the Code make it clear that the Department and other government units are subject to income deduction orders in Chapter 13 cases. If 11 U.S.C. § 1325(b) is not itself sufficient authority to support the income deduction order herein, there can be no doubt that § 105(a) of the Code and §§ 1471(a) and (e) of Title 28 of the United States Code give the Court authority to issue the challenged orders. 11 U.S.C. § 105(a) reads in full as follows:

> (a) the bankruptcy court may issue any order, process, or judgment that is *necessary or appropriate* to carry out the provisions of this title.

Section 105(a) is an intentionally broad grant of authority to the United States Bankruptcy Courts to facilitate the orderly administration of bankruptcy cases. This section is much broader than its predecessor, § 2A(15) of the prior Act. Unlike the restriction under prior law that an order of a bankruptcy court must be "necessary for the enforcement of the provisions of this title," § 105 authorizes the bankruptcy court to also issue orders "appropriate to carry out the provisions of this title." The power contained in § 105 is arguably more extensive than that contained in All Writs Statute, 28 U.S.C. § 1651.

Section 105 complements the all encompassing grant of jurisdiction now contained in 28 U.S.C. § 1471, which provides in part:

> (e) the bankruptcy court in which a case under Title 11 is commenced shall have exclusive jurisdiction of all of the property, whereever located, of the debtor, as of the commencement of such case.

As outlined below, the debtor's right to receive disability benefits is property of the Chapter 13 estate. Such property is unquestionably within the jurisdiction of the United States Bankruptcy Court. Section 105(a) authorizes the Bankruptcy Court to issue orders "necessary and appropriate" to carrying out the provisions of the Chapter 13 plan. The plan herein calls for the payment of disability benefits to the Trustee for distribution to creditors.

The Department cannot claim the immunity from income deduction orders which may have been available under prior law. As demonstrated in *United States v. Krakover*, 377 F.2d 104 (10th Cir. 1967), agencies of the United States government had realized some insulation from income deduction orders in Chapter 13 cases under prior law. In *Krakover* the 10th Circuit reasoned that § 658(2) of the prior Bankruptcy Act, 11 U.S.C. § 1058(2), limited the enforceability of income deduction orders in Chapter 13 cases to an "employer" other than the United States government. The language of § 1325(b) of the Code and the definitions contained in § 101 clearly overrule the immunity analysis in *Krakover*.

Moreover, 11 U.S.C. § 106 specifically addresses the immunity issue as follows:

> Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
> (1) a provision in this title that contains "creditor," "entity", or "govern-

mental unit" applies to governmental units; . . .

Congress, thus, contemplated a waiver of the principle of sovereign immunity of the United States at least to the extent of subjecting government agencies to income deduction orders as "entities" under § 1325(b).

■ Congress contemplated that individuals receiving disability income could be debtors under Chapter 13 of the new Bankruptcy Code. An "individual with regular income" who otherwise meets the requirements of § 109(e) of the Code is eligible to be a debtor under Chapter 13. 11 U.S.C. § 109(e). Section 101(24) of the Code defines "individual with regular income" to mean:

". . . [an] individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title . . ." 11 U.S.C. § 101(24).

The legislative history of § 101(24) reveals that Congress presupposed the use of disability benefits as income "sufficiently stable and regular" to provide funding for a Chapter 13 plan. The House Report relating to § 101(24) contains the following observation:

"Thus, individuals on welfare, social security, fixed pension incomes, or who live on investment incomes, will be able to work out repayment plans with their creditors rather than being forced into straight bankruptcy." H.R.Rep.No.95–595, 95th Cong., 1st Sess. at 312 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6269.

*See,* S.Rep.No.95–989, 95th Cong., 2d Sess. 24, 119, 312 (1978). *See also,* 2 Collier on Bankruptcy ¶ 101.24 (15th Ed.). As demonstrated above, § 1325(b) authorizes the United States Bankruptcy Court in Chapter 13 cases to order any entity from whom the debtor receives income to pay all or a portion of that income to the Trustee. An order to the Department to pay disability benefits to the Trustee in a Chapter 13 case was, thus, contemplated by Congress in the framing of the new Code.

■ The debtor's future disability benefits are property of the estate in a Chapter 13 case. The expanded notion of "property of the estate" in Chapter 13 cases is unquestionably broad enough to include the debtor's disability benefits. 11 U.S.C. § 1306 reads in part as follows:

(a) Property of the estate includes, in addition to the property specified in § 541 of this Title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted . . .

Section 541, 11 U.S.C. § 541, reads in part as follows:

(a) The commencement of the case . . . creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all *legal or equitable interests of the debtor in property as of the commencement of the case.* [Emphasis added].

Section 1306 thus expands the definition of property of the estate contained in § 541 to include all legal or equitable interests in property which the debtor acquires after the commencement of the case. Disability benefits to be paid to the debtor in the future would certainly constitute a "legal or equitable" interest in property and would become part of the Chapter 13 estate by operation of § 1306(a)(1).

■ Any argument that disability benefits do not become part of the Chapter 13 estate by operation of non-bankruptcy law is refuted by the language of the Code and by the legislative history. It cannot be argued that the exemption from assignment or claims of creditors contained in 5 U.S.C. § 8130 acts to exempt disability benefits from the definition of property of the estate in Chapter 13 cases. Under § 70(a) of the prior Bankruptcy Act, this argument may well have been correct. Under prior law it was necessary to look to non-bankruptcy law—state and/or federal—to deter-

mine whether a debtor's interest in property became part of the bankruptcy estate. *See, e. g., Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). Section 541 of the new Code eliminates virtually all of this dependence on non-bankruptcy law. Under § 541 the determination of what is property of the estate does not depend on whether non-bankruptcy law permits the debtor to transfer the property involved or would permit the debtor's creditors to reach the property. *See,* 4 Collier on Bankruptcy ¶ 541.02[1] (15th Ed.). *See, also,* 4 Collier on Bankruptcy ¶ 541.09 (15th Ed.). Section 541(a) includes as property of the estate *all interests* the debtor may have in property, without regard to whether the property or the debtor's interest in the property is transferrable or could be seized by creditors. The fact that non-bankruptcy law— here 5 U.S.C. § 8130—may limit the ability of creditors to attach or levy upon benefits in the non-bankruptcy context does not affect whether such benefits are property of the estate in a Chapter 13 case.[3]

To further buttress the general definition of property of the estate in § 541 and to further emphasize the abandoned reliance on other laws for a definition of property of the estate, § 541(c)(1)(A) declares that a debtor's interest in property becomes property of the bankruptcy estate "notwithstanding any provision—. . . that restricts or conditions transfer of such interest by the debtor . . ." 11 U.S.C. § 541(c)(1)(A). Thus, for purposes of determining what is and what is not property of the Chapter 13 estate, § 541(c)(1)(A) invalidates provisions in agreements or in non-bankruptcy law which pretend to restrict or condition the transfer of the debtor's interest in property. *See* 4 Collier on Bankruptcy ¶ 541.22 (15th Ed.); S.Rep.No.95–989, 95th Cong., 2nd Sess. at 83 (1978). 5 U.S.C. § 8130 is such a provision of non-bankruptcy law and cannot operate to deprive the Chapter 13 estate of disability benefits under §§ 541 and 1306.

---

**3.** The scheme of the Code is clear both from its provisions and its legislative history. Everything is property. Those items necessary for a

Restrictions on assignment, garnishment, attachment and the like are found in numerous other statutes. *See,* for example, 42 U.S.C. § 1717 protecting injury and death benefits; 38 U.S.C. § 770(g) protecting payments under Servicemen's Group Life Insurance or Veterans' Group Life Insurance; 38 U.S.C. § 3101 protecting payments made under any law administered by the Veterans' Administration; 33 U.S.C. § 775 protecting benefits for widows of lighthouse service personnel; 42 U.S.C. § 407 protecting payments made by the Social Security Administration. To hold that recipients of benefits under the above cited statutes are denied eligibility as Chapter 13 debtors is unthinkable. To eliminate availability of Chapter 13 relief to such a substantial segment of the populace does not accord with the obvious intent of Congress.

At present the government is recovering overpayments pursuant to § 8129 of the Federal Employees' Compensation Act. The Department asserts that the claim for overpayments is a secured claim under 11 U.S.C. § 506(a) which provides:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim . . .

The debtor in the motion to amend the plan has agreed to the characterization of the debt as secured.

No creditor has challenged the characterization of the debt as secured. However, the characterization and the resulting classification must be examined in the context of 11 U.S.C. § 1325 before the plan can be confirmed.

---

fresh start will then be exempted to the debtor under 11 U.S.C. § 522.

In *In re Wade*, 4 B.R. 98 (M.D.Tenn. 1980) this Court discussed the classification of claims. We concluded the Code requires that claims of the same character be treated equally—that there be no discrimination either against creditors in a class nor against classes of creditors unless justified by the classification scheme.

Accordingly, we must determine that the claim of overpayment by the Department can properly be characterized as secured and, thus, placed in a class of its own. The Department asserts secured status because it asserts a right of setoff under 11 U.S.C. § 553.[4] That section contemplates mutuality at the time of filing of the petition—both the debt and the claim considered as of the filing date.

Collier states:

Generally speaking, the rights of parties under section 553 are adjusted as of the date on which the case is commenced. We have already seen that section 553(a) comprehends only "mutual debts and claims" and that debts owed to and claims against the debtor prior to bankruptcy cannot be setoff against debts owed to or claims against the debtor's estate (as represented by the trustee) arising after bankruptcy. This is because the element of mutuality of obligation is lacking. 4 Collier on Bankruptcy ¶ 553.- 10[1] (15th ed. 1979).

■ Thus, the amount of setoff is limited to funds available at the time of filing the petition, not amounts available subsequently. The filing of the petition fixes "the line of cleavage with reference to the condition of the bankrupt estate" and debts and credits are figured as of that date. *In re Mont-gomery Bros.*, 51 F.2d 284, 285 (S.D.Miss. 1931). *See also, In re Ward La France Truck Corp.*, 5 Bankr.Ct. Dec. 1110 (W.D.N. Y.1979); *Avant v. United States*, 165 F.Supp. 802 (E.D.Va.1958); *McDaniel Nat. Bank v. Bridwell*, 74 F.2d 331 (C.C.A. 8th Cir. 1934); *In re Michaelis & Lindeman*, 196 F. 718 (S.D.N.Y.1912); *In re Bingham*, 94 F. 796 (D.Vt.1899). Only debts or credits existing at the time of filing can be setoff against the other and transactions occurring later cannot be taken into account. *Bramham v. Lanier Bros.*, 138 Tenn. 702, 200 S.W. 830 (1918).

■ Accordingly, the right of setoff cannot be asserted against future, unmatured payments due the debtor. Set off rights are limited to amounts due at filing. The Department therefore has no security interest in any amount other than the amount due at filing.

Under the Act the United States was granted a priority for its claims in 11 U.S.C. § 104a(5).[5] 11 U.S.C. § 1322 requires the debtors' plan to pay in full all claims accorded priority in 11 U.S.C. § 507. However, § 507 does not accord the government a priority for any claim other than tax claims.

■ Thus, it appears the government—Department of Labor—has only an unsecured claim for the balance of the overpayment. This claim cannot be placed in a class and treated differently from the claims of other unsecured creditors.[6]

Accordingly, the Court holds the disability payments to the debtor are subject to the orders of the Chapter 13 court. Further, the Court finds no basis for determining the

4. 11 U.S.C. § 553 provides:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title . . . . .

5. A priority was given for:

debts [other than for taxes] owing to any person, including the United States, who by the laws of the United States [is] entitled to priority . . .

6. We do not have presented the question of the dischargeability of this claim. Nor do we then consider whether if non-dischargeable the claim can be separately classified so as to meet the requirements of 11 U.S.C. § 1325.

Department's claim against the debtor to be treated on any basis other than that of other unsecured creditors. It is emphasized that the Court does not seek to intrude into the areas of determining disability nor periodic redetermination of disability.

█ Congress in the numerous ways above discussed has indicated recipients of government benefits may elect to obtain the benefits of Chapter 13 and may voluntarily have a portion of their income paid to the Trustee for the benefit of their creditors. Casual reference to the legislative history of Chapter 13 establishes Congressional attitude toward individuals desirous of paying their debts under Chapter 13. The legislative goal was to make it more attractive to debtors by increasing benefits to the debtor. Equally clear is the goal to make it more available.

It is not surprising that Congress clearly and unmistakably made Chapter 13 available to employees of the government and to others receiving benefits from the government.

The Department must honor the payroll deduction order and, further, must cease the withholding of the $400 monthly overpayment repayment. Any funds withheld since filing should be transmitted to the Chapter 13 Trustee.

It is so ordered.